IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
APR 28 2005
MATTHEW J. DYKMAN
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                         CASE NO. 04-CR-1122-RB

ALFREDO PEREZ-NUNEZ

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's ("Perez-Nunez") sentencing. At sentencing Perez-Nunez objected to the U.S.S.G. § 2L1.2(b)(1)(A) 16 level enhancement he received, due to a prior conviction in Colorado for Third Degree Assault, in calculating his sentencing range under the Guidelines. The enhancement contributed to a Guideline range of 57-71 months. For the reasons that follow and after giving considerable weight to the recommended sentence under the Guidelines and the factors laid out in 18 U.S.C. § 3553(a), I hereby sentence Perez-Nunez to 24 months in jail followed by a supervised release term of 2 years.

Perez-Nunez argues that the enhancement is not warranted because 1) his prior conviction was a misdemeanor in Colorado and he was sentenced to only twenty-four days in jail; 2) he pled guilty to a *mens rea* of knowingly or recklessly; and 3) the Guidelines are merely advisory after the Supreme Court's ruling in *United States v. Booker* so the Court does not have to utilize them in calculating Perez-Nunez's sentence. I reject Perez-Nunez's first two arguments but agree with his third argument.

## I. Background.

On October 22, 2001, Perez-Nunez pleaded guilty to Third Degree Assault in Eagle County, Colorado and served twenty four days in jail. The conviction stemmed from an incident in which Perez-Nunez threw a rock at the rear window of a Ford Explorer after the driver had attempted to run him over four times during a dispute over a Sony Discman. At the time of Perez-Nunez's conviction, Colorado codified Third Degree Assault as a misdemeanor punishable by a term of imprisonment of 6 to 18 months. *see* C.R.S.A. § 18-3-204. On July 3, 2003, the United States Government deported Perez-Nunez subsequent to a conviction on January 6, 2003 in Eagle County, Colorado, for criminal impersonation and driving under the influence of alcohol ("DUI"). On March 31, 2004, United States Border Patrol agents stopped Perez-Nunez and seven other undocumented aliens walking west of Columbus, New Mexico. All of them were citizens of Mexico present in the United States illegally. Perez-Nunez was subsequently convicted of Reentry of Deported Alien Previously Convicted of a Felony in violation of 8 U.S.C. § 1326(a)(1) & (2) and 8 U.S.C. § 1326(b)(1). The statutory maximum sentence for this crime is 10 years in prison.

## II. Calculation of Perez-Nunez's sentence under the Guidelines.

The Probation Office prepared a Presentence Report ("PSR") and applied the 2003 Guidelines Manual in determining the appropriate sentencing range. Perez-Nunez's conviction under 8 U.S.C. § 1326 (a)(1) & (2) and (b)(1) generated a base offense level of 8. *See* U.S.S.G. § 2L1.2(a). A defendant receives a 16 level enhancement if he or she had previously been deported following a conviction for a felony crime of violence. U.S.S.G. § 2L1.2(b)(1)(A).

The Guidelines define "felony" as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2(b)(1)(A), comment. (n.2). Perez-

Nunez was convicted of a state offense, Third Degree Assault under Colorado law, punishable by a term exceeding one year (6 to 18 months). Perez-Nunez's prior conviction, therefore, constituted a felony under the Guidelines.

The Guidelines define "crime of violence" as any one of the following: "murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.*" *Id.* at n.1 (emphasis added). Because Third Degree Assault in Colorado has as an element the knowing or reckless use of force against the person of another, it is a "crime of violence" under the Guidelines. Perez-Nunez's first two arguments are without merit because he is subjected to the 16 level enhancement under the plain language of the Guidelines.

Applying a 16 level enhancement to a base offense level of 8 produces a total adjusted offense level of 24. Subtracting 3 levels for acceptance of responsibility, Perez-Nunez's total offense level is 21. He has nine criminal history points, which places him in a criminal history category of IV. *See* U.S.S.G. § 4A1.1(c). A total offense level of 21, with a criminal history category of IV, subjects Perez-Nunez to a Guideline range of 57-71 months. *See* U.S.S.G. Sentencing Table. The Government asks for a 57 month sentence followed by a two year period of supervised release, which is proper under the Guidelines.

### III. The Guidelines are no longer mandatory after *United States v. Booker*.

The Supreme Court's recent holding in *Booker* "makes the Guidelines effectively advisory." *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005). Moreover, "[i]t requires a sentencing

3

court to consider Guidelines ranges . . . but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)(Supp. 2004)." *Id.* 18 U.S.C. § 3553(a) states that the Court, in determining the particular sentence to be imposed, shall consider (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the potential for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant; and (iii) the potential for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### IV. Policy arguments for varying from the Guidelines.

#### A. The intent of the Guidelines is to promote uniformity in sentencing.

It is well established that the intent of the Guidelines is to promote uniformity in sentencing. The Supreme Court's opinion in *Booker* is replete with references to Congress' intent in establishing the Sentencing Commission. For example, the Supreme Court reasoned that the approach "which we now adopt, would . . . make the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's *real conduct*--a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005) (emphasis added). Again, the Supreme Court noted that: "[T]he sentencing statute's basic aim [is] ensuring similar sentences for those who have committed similar crimes in similar ways . . . . Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity . . . . It consists, more importantly, of similar relationships between sentences and real conduct, relationships that Congress' sentencing statutes helped to advance . . . ." *Id.*

4

## B. The catchall definition of "crime of violence" does not promote uniformity.

Congress first defined "aggravated felony" in the 1988 Anti Drug Abuse Act. *See* Kathleen O'Rourke, *Deportability, Detention, and Due Process: An Analysis of Recent Tenth Circuit Decisions in Immigration Law*, 79 DENV. U. L. REV. 353, 354, n. 9 (September 2001/August 2002). The original definition included only murder, drug trafficking, and firearms trafficking. *Id.* at 354. Then, in 1990 and 1994, Congress added crimes of violence, money laundering, theft, burglary, child pornography, treason, and certain tax offenses to the aggravated felony category with the passage of the Immigration Act and the Immigration and Nationality Technical Corrections Act. *See* Linda Drazga Maxfield, *Aggravated Felonies and § 2L1.2 Immigration Unlawful Reentry Offenders: Simulating the Impacts of Proposed Guideline Amendments*, 11 GEO. MASON L. REV. 527, 529 n. 12 (2003).

In 1991, the Guidelines added the aggravated felony statutory requirement under § 2L1.2. O'Rourke at 528. At the time, this category of crimes included only murder, trafficking in drugs or firearms, and any attempt or conspiracy to commit such acts. *Id.* Moreover, 1991 marked the introduction of a 16 level enhancement for defendants previously deported as aggravated felons. *See* Robert J. McWhirter & Jon M. Sands, *Does the Punishment Fit the Crime? A Defense Perspective on Sentencing in Aggravated Felon Re-entry Cases*, 1996 WL 671556 at *2 (1996). In implementing the 16 level enhancement: "The Commission did no study to determine if such sentences were necessary or desirable from any penal theory. No Commission studies recommended such a high level . . . nor did any other known grounds warrant it." *Id.*

Prior to the 2001 amendments to the Guidelines, courts criticized the continuing expansion of the aggravated felony category. In November 2000, for example, judges in the Fifth Circuit met

5

with Sentencing Commissioners. *Id.* at 530. At the meeting they expressed their belief that: "The definition of a 'prior aggravated felony' was too broad and captured many relatively minor offenses within guideline § 2L1.2's '+16' level enhancement . . . [and] a good number of these prior aggravated felonies were nonviolent, and often were motivated by family separation circumstances rather than sinister criminal intentions." *Id.*

Other commentators also criticized the ability of the aggravated felony category to promote uniformity. One author argued that the aggravated felony provisions of the Guidelines "invite nonuniformity in immigration" because "differences in state sentencing schemes will result in variance as to whether the same underlying crime is considered an aggravated felony." Iris Bennett, *The Unconstitutionality of Nonuniform Immigration Consequences of 'Aggravated Felony' Convictions*, 74 N.Y.U. L. REV. 1696, 1720 (1999). For example, a brief review of the state assault statutes reveals that in 46 out of 50 states the maximum sentence for simple assault without serious bodily injury is no more than a year. Colorado is one of only four states that allow for a sentence of more than a year for this offense, which places it within the "crime of violence" subcategory of aggravated felonies under the Guidelines. A defendant convicted of illegal reentry with a prior misdemeanor assault charge in Colorado, therefore, is subjected to a 16 level enhancement that a defendant with the same prior conviction in 46 other states would not receive. It is difficult to see how the Guidelines promote uniformity in sentencing under this scheme.

Furthermore, the Eleventh Circuit has criticized recent amendments to the Guidelines. The 2001 Guidelines were designed to "improve proportionality among the sentences of unlawful reentry offenders when the prior aggravated felonies have widely varying seriousness levels." Maxfield at 528. In *United States v. Ortega*, 358 F.3d 1278, 1279 (11th Cir. 2003), however, the defendant

6

argued that the Guidelines failed to take into account the severity of aggravated felonies by subjecting defendants with a prior conviction for murder to the same 16 level enhancement as defendants with a prior drug trafficking conviction. The court held that a drug trafficking crime for which the sentence imposed exceeded thirteen months was serious enough to warrant the 16 level enhancement. *Id.* at 1280. The court noted, however, that "the Sentencing Commission determined that it was not fair for someone convicted of *simple assault* to receive the same increase as someone convicted of murder." *Id.* (emphasis added).

The current provision of the Guidelines that defines "crime of violence," a subcategory of "aggravated felony," includes a variety of specific crimes. In addition, it contains a catchall provision for any crime "under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, commentary (n.1). The Guidelines, therefore, subject defendants convicted of everything from murder, rape, and sexual abuse of a minor to simple assault, to the same 16 level enhancement in calculating the proper sentencing range.

### C. The 18 U.S.C. § 3553(a) analysis.

Under Section 3553(a), the Court should consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the deterrent effect and the defendant's need for treatment in constructing an appropriate sentence. The nature of the offense in this case is illegal reentry. The history and characteristics of Perez-Nunez involve a prior conviction for misdemeanor assault. I do not believe that a prior conviction for throwing a rock at a car window bears any relationship to Perez-Nunez's illegal reentry into this country. Moreover, I would impose a different sentence on a convicted murderer than I would on a defendant like Perez-Nunez, who had

7

a prior misdemeanor assault conviction before illegally reentering the country. Next, a 57 month sentence is not likely to deter Perez-Nunez from reentering the country any more than a lesser sentence of 24 months would. Lastly, with regard to the defendant's need for vocational or educational training, as a noncitizen Perez Nunez would not qualify for these programs. This factor, therefore, does not apply in this case. In sum, Perez-Nunez's real conduct, illegal reentry following a prior conviction for misdemeanor assault, does not warrant a 57 month sentence.

## V. Perez-Nunez's sentence.

Pursuant to *Booker*, a sentencing judge should consult the Guidelines and the factors listed in Section 3553(a), apply the Guidelines where those factors are met, and feel free to depart from the Guidelines when they are not. In this case, the Guidelines generated a sentencing range of 57-71 months due in large part to Perez-Nunez's 16 level enhancement for a prior assault conviction. That conviction stemmed from a relatively benign incident in which Perez-Nunez threw a rock at a car window. He served twenty-four days in jail for that offense. Section 3553(a) does not support a 57 month sentence because there is little connection between Perez-Nunez's prior assault conviction and his entering the country illegally. Moreover, I do not believe that a sentence of nearly five years would deter him from reentering the United States any more than a lesser sentence would. He has a two-year-old daughter back in Mexico and I trust he would not want to spend any more time away from her than is absolutely necessary. Lastly, a five year sentence does not provide Perez-Nunez with a greater opportunity to receive treatment than a shorter sentence would.

If the Supreme Court's ruling in *Booker* does anything, it gives a defendant hope that where the factors listed in Section 3553(a) warrant a lesser sentence than the Guidelines recommend, and where the Guidelines' goal of uniformity is not advanced, a judge can depart from the sentence

8

recommended by the Guidelines. That is the case with Perez-Nunez. The Supreme Court in *Booker* wrote that "Congress enacted the sentencing statutes in major part to achieve greater uniformity in sentencing, i.e., to increase the likelihood that offenders who engage in similar real conduct would receive similar sentences." The Guidelines as applied in this case do not promote uniformity, rather, they produce a result contrary to the spirit of the Guidelines. In addition, the Section 3553(a) factors suggest that a lower sentence is appropriate.

Having consulted the Guidelines and the factors listed in 18 U.S.C. § 3553(a), I hereby depart from the 57 month sentence generated by the Guidelines, recommended in the PSR, and requested by the Government, and sentence Mr. Perez-Nunez to 24 months in jail followed by 2 years of supervised release.

*[signature]*

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**